ELLIS, Judge:
This case is before us for the second time, on remand from the Supreme Court for a fixing of the workmen’s compensation benefits to which plaintiff, Mrs. Eula Marie Guidry, may be entitled. See Guidry v. Serigny, 378 So.2d 938 (La.1979). In our first opinion in this matter, 370 So.2d 904 (La.App. 1st Cir. 1979), we summarized the facts pertinent to this opinion as follows:
“Mrs. Guidry was employed as a cook by Conrad Serigny, who was the owner and operator of Leeville Seafood Restaurant and Lounge. On the morning of December 2, 1975, she fell, either because she fainted or had a heart attack or because she slipped on a wet or slick floor. At the trial, Mrs. Guidry testified that she slipped because the floor was newly waxed. The histories taken by various doctors in the case furnish the other versions of how the accident happened.
“After the accident, she was unconscious, and was taken by ambulance to Our Lady of the Sea Hospital in Galliano, Louisiana, where she was seen in the emergency room by Dr. William Maroma, who, at that time, specialized in internal medicine and cardiology, although not board certified. His diagnosis was heart failure and syncope. A Dr. George also examined plaintiff because of complaints of back pain, and diagnosed a mild low back strain or sprain.
“Dr. Maroma based his diagnosis, in part, on a history that Mrs. Guidry had suffered from heart disease in the past and was taking Digoxin for her heart. Dr. Maroma did not recall from whom he had obtained the history. Mrs. Guidry denied any history of heart disease, and stated that she had never been given medication for a heart condition. She testified that she had taken nitroglycerin for shortness of breath following a gallbladder operation. No direct evidence of a previous heart condition is in the record, and none of the other doctors who subsequently examined Mrs. Guidry found any abnormality relating to her heart or its function. Dr. Maroma had not seen Mrs. Gui-dry since her discharge from the hospital on December 5, 1975, and was unable to venture an opinion as to any disability arising from her heart condition.
[[Image here]]
“We think it clear from the record that Mrs. Guidry has failed to prove by a preponderance of the evidence that she is disabled because of a heart condition. No one, including Dr. Maroma, testified to that effect.
“It is equally clear that plaintiff injured her back, and was, for a time, disabled as a result thereof. . . . ”
We adhere to our finding that Mrs. Guidry has not shown that she is disabled because of a heart condition. The only question presented is the extent of her disability resulting from the back injury.
As a result of her fall, Mrs. Guidry suffered a concussion, a mild cervical strain and a herniated disc at the L4-L5 level. She was treated conservatively by Dr. William Maroma and Dr. Russell Rawls. Eventually she was seen by Dr. Kenneth E. Vogel, a neurosurgeon, who tried further conservative treatment without success. On May 30, 1976, he hospitalized Mrs. Gui-dry, and shortly thereafter, performed a lumbar laminectomy.
*297 On July 8, 1976, she was recovering uneventfully. Dr. Vogel saw Mrs. Guidry again on August 7, 1976, following a fall in a supermarket. He found that the fall resulted only in bruises and contusions and had minimal effect on her overall condition. He last saw her on October 12, 1976, at which time she had mild lumbosacral aching. He gave her instructions and told her to return if she had further problems. She did not return. Dr. Vogel estimated a 10 to 15 percent permanent partial medical impairment as a result of the disc operation. He restricted her activities to lifting, pushing or pulling no more than 35 pounds, and told her to avoid bending repeatedly.
Mrs. Guidry testified that she had attempted to return to work a few weeks after the accident, but found it too painful, and had to quit. She stated that, as of the time of trial in late 1977, she was unable to do anything except cook for her family and do light housework, such as putting clothes in the washer and dryer. She denied any other activities. She also testified that she had broken her hip when she fell in the supermarket, and had received an insurance settlement covering all of her medical and travelling expenses in connection therewith. Mrs. Guidry also testified that in her work, she was required to carry heavy sacks and cans of garbage and to lift heavy pots.
Mrs. Guidry’s testimony is rebutted in a number of respects. Dr. Vogel stated that in the supermarket fall, Mrs. Guidry suffered only bruises and contusions, whereas Mrs. Guidry stated that she broke her hip. A number of witnesses testified that they saw Mrs. Guidry perform activities such as washing cars, lifting a washtub from a boat, “rubbing” the front of her. house, sweeping cobwebs from the front of her house, mopping the floors, and mowing the lawn. Mrs. Guidry denied all of these activities. Mr. Serigny testified that he did all of the heavy lifting in the restaurant, and that Mrs. Guidry’s duties were restricted to cooking. He stated that the pots stayed on the stove while in use, and that she was not required to lift them.
Considering the evident inconsistencies in Mrs. Guidry’s testimony, we find that her job as a cook did not involve lifting, pulling or pushing weights of more than 35 pounds, or frequent bending. In the light of Dr. Vogel’s testimony as to her disability, we find that she was no longer disabled to perform her duties as a cook after October 12, 1976. She is, however, entitled to benefits between the date of the accident and October 12, 1976, when she was discharged by Dr. Vogel.
At the time of the accident plaintiff was entitled by law to 66%% of her wages for the period of her disability, not to exceed $85.00 per week. R.S. 23:1202, 23:1221. Mrs. Guidry and Mr. Serigny both testified that she was paid $2.25 per hour. However, Mrs. Guidry said that she worked eight hours per day for six days per week. Mr. Serigny testified that Mrs. Guidry started to work on Monday, and worked until she had 40 hours. He further stated that she would work six or seven days per week. We think Mrs. Guidry’s testimony to be the more reasonable, absent the production of employment records. Mrs. Guidry is therefore entitled to $72.00 per week from December 2, 1975, until October 12, 1976.
We do not find that Mrs. Guidry can collect penalties and attorney’s fees, since there was a substantial legal question as to her entitlement to compensation benefits.
Accordingly, there will be judgment in favor of plaintiff and against defendant, awarding her workmen’s compensation benefits at the rate of $72.00 per week from December 2, 1975, until October 12, 1976, with legal interest in each installment from its due date until paid in full. There will also be judgment for all medical expenses incurred by plaintiff as a result of the accident, specifically excluding, however, those attributable to the fall in August, 1976. All costs shall be paid by defendant.